THORNBERRY, Circuit Judge:
This case is yet another aspect of the bankruptcy of Barbara Garfinkle.[1] In this portion of the case the bankruptcy judge ruled that Curtis Katz had no surviving interest in the primary asset involved in the bankruptcy, the Eden Roc Hotel. Katz’s asserted interest had arisen from loans made to Barbara Garfinkle.
At the outset of the Chapter XII arrangement proceedings,[2] the Trustee sought a show cause order, which, if granted, would have restrained further lien enforcement proceedings in any other court, ordered the Trustee for the Eden Roc Corporation to transfer the hotel to the bankruptcy Trustee’s custody, permitted the Trustee to borrow $100,000 and to issue trustee’s certificates therefor, and authorized the Trustee to negotiate the purchase of the hotel by contracting with any substantial prospective purchaser.[3] Katz was present at the hearing on the show cause order, represented by counsel. He presented no objections at the hearing but he thereafter advised the Miami Beach First National Bank, which had been ordered to terminate the land trust agreement and transfer fee title and the lessee’s interest to the Trustee, that he objected to the administration of the hotel assets. The Trustee then filed an application for emergency relief, noting that Katz’s claim was listed in the bankrupt’s schedules as a collateral assignment of the beneficial interest for security purposes. The court then ordered possession and custody of the hotel transferred to the Trustee, ordered that the land trust be terminated and the interest transferred to the Trustee and ordered that the Trustee file a complaint to determine the amount, priority and validity of all liens relating to the Eden Roc. Katz filed a motion to dismiss the complaint for lack of subject matter jurisdiction, claiming that his absolute ownership of fifty per cent of the beneficial interest in the Eden Roc deprived the bankruptcy court of power. That motion was denied.
The bankruptcy court found as a fact that in September 1974, Katz had agreed to lend Barbara Garfinkle $60,000. Katz received in return a demand note. In October 1974, Katz agreed to advance additional funds on the condition that he receive a conveyance of one-half interest in the hotel. Garfinkle, acting for his wife, agreed to the conveyance but insisted that it be on a security basis under which she would have an opportunity for reconveyance if she repaid the loan.[4] Katz then advanced an additional $75,000. Between October 4 and October 6, Katz did execute a reconveyance of the one-half beneficial interest which he gave to his attorney to hold pending further development. A letter between the parties on October 8 confirmed the reconveyance aspect of the agreement.
*908 When Mrs. Garfinkle was unable to continue the repayment on the loan, Katz attempted to orally void the reconveyance agreement. The bankruptcy court, however, found that there was no credible evidence that Katz actually voided the promissory note given in conjunction with the $60,000 loan or the reconveyance document prior to the initiation of bankruptcy proceedings. Katz never gave notice to Barbara Garfinkle that the assignment was in default; no notice was given to either of the Garfinkles that the reconveyance agreement was no longer in effect. Katz never took an active part in the hotel management. In November 1974, Katz loaned the Garfinkles another $135,000 to enable them to pay Samuel Cohen, the second mortgage holder on the Eden Roc. The repayment to Cohen was not treated as one from Katz and the Garfinkles, but was treated entirely as a loan between them. In connection with the loan, Katz took an assignment of the.Eden Roc’s accounts receivable.
Despite the fact that Katz examined the papers filed in connection with the initiation of the Chapter XII proceedings, which listed his interest as a security interest, he made no complaint. In the meetings with various mortgagees prior to the adjudication of bankruptcy Katz asserted no interest in the hotel property. During the period in question Katz did not list any ownership interest in the Eden Roc Hotel on his personal financial statements or on his personal income tax return.
The bankruptcy court determined that although Katz did orally attempt to cancel the reconveyance agreement his subsequent conduct clearly established that he was content to permit Barbara Garfinkle to continue to act as sole owner of the property and to rely upon the promissory notes, which the court found to have remained uncan-celled, for repayment of his debt. Under those circumstances the bankruptcy judge ruled that the right of redemption had not been cut off and that the trustee in bankruptcy was vested with the bankrupt’s right to redeem and obtain reconveyance subject at most to a security interest in the beneficial ownership by virtue of the collateral assignment to Katz.
The court noted first that under Florida law any conveyance of real or personal property for the purpose of securing the payment of money is deemed to be a mortgage. Fla.Stat.Ann. § 697.01.[5] Redemp *909 tive rights under such a mortgage are not cut off without a proper foreclosure. Grable v. Nunez, 64 So.2d 154 (Fla.1953). The court found alternatively that Katz’s interest in the assignment of the beneficial interest in the land trust was a security interest in a general intangible under Florida’s version of the Uniform Commercial Code, Fla.Stat.Ann. § 679.106, and that the secured party’s right to absolute retention of the collateral could not be exercised for failure to give the written notice required by Fla.Stat.Ann. § 679.505(2). Under either alternative, Katz had failed to take steps to convert his interest into an unconditional right of ownership. Finally the court held that although Katz had a security interest in one-half of the beneficial rights under the land trust agreement, his failure to file a financing statement covering the beneficial interest rendered him vulnerable to the trustee’s power under Section 70(c) of the Bankruptcy Act. Under the clause, the Trustee, armed with the rights of a hypothetical lien creditor as of the date of the commencement of bankruptcy proceedings could cut off Katz’s interest. 11 U.S.C. § 110(c).
On appeal, Katz claims that the bankruptcy judge’s erroneous allocation of the burden of proof requires reversal and that the bankruptcy judge’s findings of fact were clearly erroneous.
Under the clearly erroneous standard we may reverse the bankruptcy judge’s findings if, despite the fact that there is evidence to support them, we are left on consideration of all the evidence with the definite and firm conviction that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); In re Winn Dixie Stores, Inc., 386 F.2d 309 (5 Cir. 1967); United States v. Trout, 386 F.2d 216 (5 Cir. 1967). In the present case, we cannot support such a conviction. The bankruptcy judge found that although Katz asked for an absolute conveyance in return for the $75,000 loan, Barbara Garfinkle’s husband insisted that the agreement contained an opportunity for reconveyance if the loan were repaid. Nothing in Florida law prevents the bankruptcy judge from considering the entire transaction and all circumstances surrounding it to determine the exact nature of a conveyance. McLendon v. Davis, 131 So.2d 765 (Fla.App.1961). In fact, since the intention of the parties determines the character of the conveyance, he is required to do so. Id. The evidence that the assignment of the beneficial interest was intended as less than an absolute conveyance is overwhelming. Not only did other documents contain the agreement to reconvey if the loan were paid, but Katz’s subsequent actions were in no way indicative of his claim of absolute ownership. Rather we think that they mirrored his intention to rely upon the promissory notes to collect the debt owed to him. The bankruptcy judge found that those notes were not cancelled until the bankruptcy proceedings began. That finding depended upon the bankruptcy judge’s perception of Katz’s credibility, which we will not disturb on appeal. Having examined carefully the record as a whole, we find that the bankruptcy judge’s factual findings that Barbara Garfinkle and Curtis Katz intended that the assignment of the beneficial interest in the Eden Roc Hotel be subject to Barbara Garfinkle’s right of redemption was not clearly erroneous.
 Katz’s second point of error is that the bankruptcy judge misplaced the burden of proof. Katz argues that under Florida law, the grantor of a conveyance absolute on its face bears the burden to prove that it is in fact a mortgage. Barr v. Schlarb, 314 So.2d 609 (Fla.App.1975). Thus he argues that the Trustee, standing in the shoes of the bankrupt under Section 70(a), should have had to prove that Katz’s interest was a mortgage, and that the bankruptcy court *910 erroneously required him to show that he was an absolute owner. Some language in the bankruptcy court’s opinion, read in isolation, gives support to Katz’s theory that he was required to prove ownership.[6] Taken as a whole, however, the opinion demonstrates that on the crucial question of intention the evidence was so one-sided that the Trustee far surpassed any burden of proof he might have borne.[7] Like the admission of evidence, the allocation of the burden of proof is primarily a matter of concern in a trial before a jury. Cf. Thompson v. Baltimore & Ohio R. R. Co., 155 F.2d 767 (8 Cir.), cert. denied, 329 U.S. 762, 67 S.Ct. 122, 91 L.Ed. 657 (1946); Hedrick v. Perry, 102 F.2d 802 (10 Cir. 1939). In the face of a record of overwhelming evidence that Katz and the Garfinkles intended that the transactions between them were not absolute conveyances, we will not reverse the bankruptcy court’s decision. That decision, that Curtis Katz had no absolute ownership interest in the Eden Roc Hotel and that his mortgage interest or security interest were subject to the redemptive rights or the hypothetical lien creditor powers of the Trustee, is AFFIRMED.

. See Weil v. Lansburgh, 5 Cir., 577 F.2d 901 [No. 76-3765].

. Chapter XII covers real property arrangements by persons other than corporations.

. The court granted the order except for the portion relating to the issuance of trustee certificates. It reserved decision on that portion until a later proceeding.

. The record reveals that Barbara Garfinkle is the nominal owner of the Eden Roc, but that business negotiations relating to the hotel were conducted almost entirely by her husband.

. All conveyances, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages.
Fla.Stat.Ann. § 697.01.
That statute has been applied to an assignment of interest, absolute on its face. First Mortgage Corporation of Stuart v. deGive, 177 So.2d 741 (Fla.App.1965). Under Fla.Stat.Ann. § 689.071(4) the interest of a beneficiary in a trust is considered personal property. By its own terms Fla.Stat.Ann. § 697.01 applies to the conveyance of real as well as personal property. Katz argues that O’Neal v. MacNeill, 216 So.2d 465 (Fla.App. 1969) requires us to construe this instrument as an absolute conveyance. In O’Neal the plaintiff advanced money to permit the defendant to exercise an option to purchase certain land. In return, the defendant conveyed an undivided one-fourth interest in the land to the plaintiff. Plaintiff and defendant also agreed to plaintiffs further purchase of another one-fourth interest in the land. The defendant failed to meet the payments on the purchase money mortgage and the plaintiff, in order to protect his interest, paid out approximately $27,000. The defendant then executed a deed of conveyance, absolute on its face purporting to convey to the plaintiff the remaining one-half interest in the property. At trial the plaintiff argued that the absolute deed to him was in reality a mortgage. The trial court ruled that it was a deed. The intermediate appellate court accepted that ruling as unchallenged upon appeal. 216 So.2d 465, 467. The court did so because it regarded the holding as unchallenged when the appellee did not raise it on cross-assignment of error. The Florida Supreme Court reversed the intermediate court and remanded the case for a consideration of whether the conveyance was a deed or a mortgage on the ground that the appellee, not being aggrieved by the lower court’s decision, did not need to raise the issue of whether the conveyance was a deed on appeal. The intermediate court had said that the test of whether a conveyance was a deed or a mortgage was wheth *909 er or not some debt remained to be paid. Section 697.01 makes clear that the test is the intention of the parties. That statute was not considered by the O'Neal court. Because the intermediate court was not deciding the mortgage or deed issue we do not regard its test as dispositive.

. The bankruptcy judge’s opinion states:
The Court concludes that Curtis Katz has failed to prove by a preponderance of the evidence that he was vested with a valid beneficial ownership interest in the Eden Roc Hotel .

. Katz seizes upon the sentence in footnote 6, supra, standing alone, as proof of the misallo-cation. The immediately following sentence states:
On the contrary, the Court concludes that the preponderance of the evidence establishes that Curtis Katz, by his actions and conduct after the occurrence of the events of October of 1974, failed to take requisite affirmative action to cut off the redemptive rights of Barbara Garfinkle to protect her ownership interest in the Eden Roc Hotel.
Read together, the sentences demonstrate that the bankruptcy judge’s statements were nothing more than an expression of his opinion that the balance of the evidence was on the side of the Trustee. We do not think they were intended as an allocation of the burden of proof.